UNITED STATES, Appellee,

v.

Leon J. DODD, Defendant, Appellant.

No. 94–1124.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1994.

Decided Jan. 6, 1995.

Robert Sheketoff with whom Sheketoff & Homan, Boston, MA, was on brief, for appellant.

Despena Fillios Billings, Asst. U.S. Atty., with whom Donald K. Stern, U.S. Atty., Boston, MA, was on brief, for appellee.

Before CYR and STAHL, Circuit Judges, and DiCLERICO, District Judge.*

STAHL, Circuit Judge.

After a four-day jury trial, defendant Leon Dodd was convicted on criminal charges stemming from the shipment of various Iraqi weapons into the United States following the end of the Gulf War. On appeal, Dodd challenges the sufficiency of the evidence and whether 18 U.S.C. § 545 actually proscribes the conduct for which he was convicted. After careful review, we affirm.

## I.

### Background

Because Dodd challenges the sufficiency of the evidence supporting his conviction, we recite the facts in the light most favorable to

*Of the District of New Hampshire, sitting by designation.

the verdict. *See, e.g., United States v. Inna-morati,* 996 F.2d 456, 469 (1st Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 409, 126 L.Ed.2d 356 (1993).

On December 5, 1990, Dodd, a First Sergeant in the U.S. Army Reserves, shipped out to Saudi Arabia in preparation for Operation Desert Storm. Dodd was initially assigned to the 173d Medical Group, which was responsible for managing health care services. After the war ended, Dodd was assigned additional duties involving the inspection of equipment scheduled for transport back to the United States. Specifically, he was trained by the Customs Service, the Military Police, and the Department of Agriculture to serve as a designated Customs Inspector.

In August of 1991, Dodd ordered a shipping container to be sent to his location in Saudi Arabia. Along with equipment belonging to his reserve unit, Dodd stored three Iraqi RPG ground-propelled rocket launchers and two Iraqi mortar tubes with tripods and plates in the container. Subsequently, he arranged for the container to be shipped to his reserve unit's home post at Hanscom Air Force Base in Bedford, Massachusetts. Dodd did not notify anyone that he had placed the weapons, all of which were in working condition, inside the container. Consequently, the U.S. Army, which was the shipper of record, did not declare the weapons to U.S. Customs.

Dodd, whose civilian job was a physical security specialist with the 94th ARCOM [1] at Hanscom Air Force Base, listed himself as the contact person to be notified when the container arrived in Massachusetts. Because Dodd was on vacation when the container

arrived, another individual opened it and discovered the weapons. Subsequently, an officer from Dodd's reserve unit confronted Dodd and queried whether Dodd had the proper paperwork for the weapons. Dodd responded affirmatively and then proceeded to create false documents that purportedly authorized the shipment of the weapons as war trophies. Prior to the container's arrival, Dodd had told this same officer that he (the officer) did not want to know what equipment was being shipped in the container.

On December 22, 1992, a grand jury indicted Dodd, charging him with knowingly facilitating the transportation or concealment of illegally imported merchandise in violation of 18 U.S.C. §§ 2 and 545.[2] Following a four-day jury trial, Dodd was convicted. This appeal followed.

## II.

### Discussion

Dodd essentially raises two issues on appeal: (1) that the government failed to meet its burden in proving that the shipment of the Iraqi weapons into the United States was "contrary to law" and (2) that the relevant language of 18 U.S.C. § 545 does not proscribe the conduct for which he was convicted.[3] We discuss each in turn.

### A. Sufficiency of the Evidence: Importation Contrary to Law

Dodd contends that the government failed to prove beyond a reasonable doubt that the Iraqi weapons were illegally imported into the United States. Dodd does not dispute that a failure to declare the weapons

---

1. The 94th ARCOM is the Army command for the New England area.

2. Dodd's indictment specifically tracked the language of the second prong of the second paragraph of 18 U.S.C. § 545, which provides punishment for, *inter alia:*

   Whoever fraudulently or knowingly ... in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law....

   18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

3. Additionally, Dodd recharacterizes his second argument as a challenge to the district court's jury instructions. We reject this assignment of error for essentially the same reasons as discussed *infra* part II.B.

to U.S. Customs would constitute a violation of the law, but instead argues that the evidence was insufficient to support a finding that the Army did not declare them. We do not agree.

■■■ In assessing the sufficiency of the evidence, "[o]ur task is to review the record to determine whether the evidence and reasonable inferences therefrom, taken as a whole and in the light most favorable to the prosecution, would allow a rational jury to determine beyond a reasonable doubt that the defendants were guilty as charged." *United States v. Torres–Maldonado*, 14 F.3d 95, 100 (quoting *United States v. Mena–Robles*, 4 F.3d 1026, 1031 (1st Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1550, 128 L.Ed.2d 199 (1994), *modified on other grounds sub nom., United States v. Piper*, 35 F.3d 611, 614–15 (1st Cir.1994)). "In arriving at our determination, we must credit both direct and circumstantial evidence of guilt, but must do so without evaluating the relative weight of different pieces of proof or venturing credibility judgments." *United States v. De Masi*, 40 F.3d 1306, 1314 (1st Cir.1994) (internal quotations omitted). Furthermore, we do not ask whether the government has disproven every reasonable hypothesis of innocence so long as the record as a whole supports a verdict of guilt beyond a reasonable doubt. *E.g., United States v. Vavlitis*, 9 F.3d 206, 212 (1st Cir.1993).

At trial, the government introduced documents that sequentially traced the shipment of the military container that held the weapons from its initial delivery to Dodd in Saudi Arabia to its ultimate arrival at Hanscom Air Force Base in Massachusetts. Each of these documents referenced the container by its military identification number. None of them disclosed that the Iraqi weapons were stored in the container. Furthermore, one document was stamped with a certification that declared to U.S. Customs that all of the items covered by that document were produced or manufactured in the United States.

The government also introduced a carrier certificate for the container stamped by U.S. Customs that did not list the weapons. A customs agent testified that, if the presence of the weapons in the container had been known, customs officials would have noted them on this form. Clearly, a reasonable jury could plausibly infer from this evidence that the weapons were not declared and thus were brought into the United States in contravention of the law.[4]

## B. Statutory Construction

For his second assignment of error, Dodd principally argues that the relevant portion of 18 U.S.C. § 545 proscribes only conduct that occurs after importation. *See supra* note 2. He reasons that one could not facilitate transportation or concealment of "merchandise" while possessing the requisite knowledge that it *had been* illegally imported if that "merchandise" had not yet entered the United States. Dodd further contends that because the government's evidence established only that he performed actions in Saudi Arabia prior to the shipment of the weapons to the United States, it was insufficient to sustain his conviction.

■■■ Though Dodd's argument presents an interesting question of statutory construction, we need not address it here. Assuming *arguendo* that Dodd has correctly construed the statute, he nevertheless was also indicted under 18 U.S.C. § 2. As noted, section 2(b) of this statute provides, "Whoever willfully causes an act to be done which *if directly performed by him* or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2(b) (emphasis added).[5] A defendant may be convicted under this section even though the individual who did in fact commit the substantive act lacked the necessary criminal intent. *United*

---

4. We assume without comment that the Army's failure to declare the weapons to U.S. Customs would constitute importation or shipment into the United States "contrary to law."

5. Dodd's indictment clearly stated that he was charged under both 18 U.S.C. § 545 and 18 U.S.C. § 2. Moreover, as we have noted before,

"an aider and abettor charge [referring to subsections 2(a) and 2(b)] is implicit in all indictments for substantive offenses, so it need not be specifically pleaded for an aiding and abetting conviction to be returned." *United States v. Sabatino*, 943 F.2d 94, 99–100 (1st Cir.1991).

States v. Tashjian, 660 F.2d 829, 842 n. 26 (1st Cir.), cert. denied, 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981); accord United States v. Knoll, 16 F.3d 1313, 1323 (2d Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994); United States v. Walser, 3 F.3d 380, 388 (11th Cir. 1993); United States v. Laurins, 857 F.2d 529, 535 (9th Cir.1988), cert. denied, 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989). The purpose of section 2(b) is to remove all doubt that one who "causes the commission of an indispensable element of the offense by an innocent agent or instrumentality, is guilty as a principal even though he intentionally refrained from the direct act constituting the completed offense." 18 U.S.C. § 2 revisor's note. See United States v. Ruffin, 613 F.2d 408, 414 (2d Cir.1979); see also United States v. Harris, 959 F.2d 246, 262 (D.C.Cir.) ("Aider and abettor liability may attach to persons who are legally incapable of committing an object offense."), cert. denied, —— U.S. ——, 113 S.Ct. 362, 121 L.Ed.2d 275 (1992). Therefore, regardless of whether Dodd's conduct in Saudi Arabia was directly prohibited by 18 U.S.C. § 545, it was nonetheless punishable under 18 U.S.C. § 2(b) if it caused actions to occur after importation that, had Dodd directly performed them, would have been violations of 18 U.S.C. § 545.

As a consequence of Dodd's actions in Saudi Arabia, the military container arrived in the United States at Port Elizabeth, New Jersey, and was subsequently shipped via truck to Hanscom Air Force Base in Bedford, Massachusetts. Hence, Dodd's deliberate actions in Saudi Arabia caused various individuals to take actions facilitating the transportation of the weapons after their importation. Moreover, had Dodd performed these acts directly, he would have violated 18 U.S.C. § 545 because he would have facilitated the transportation of the weapons knowing that they had been illegally imported. Therefore, 18 U.S.C. § 2(b) proscribed Dodd's conduct because he caused acts to be performed that, had they been performed directly by him, would have been violations of 18 U.S.C. § 545. In other words, by acting through innocent parties who facilitated the transportation of the weapons from New Jer-

sey to Massachusetts, Dodd did act after the importation of the weapons knowing them to have been illegally imported. In sum, Dodd's actions in Saudi Arabia were sufficient to support his conviction under 18 U.S.C. §§ 2(b) and 545.

### III.

### Conclusion

For the foregoing reasons, the defendant's conviction is affirmed.